

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-26-2007

# Oppong v. First Union Mtg

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1388

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Oppong v. First Union Mtg" (2007). *2007 Decisions.* Paper 1735.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1735

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-1388
_____

ATUAHENE OPPONG,

v.

FIRST UNION MORTGAGE CORPORATION;
WELLS FARGO HOME MORTGAGE INC.; FRANCIS S. HALLINAN

_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 02-cv-02149)
District Judge:  Honorable Eduardo C. Robreno

_____

Submitted Under Third Circuit LAR 34.1(a)
January 4, 2007

Before:  FISHER, ALDISERT and WEIS, Circuit Judges.

(Filed   January 26, 2007 )
_____

OPINION
_____

PER CURIAM

Atuahene Oppong appeals from the District Court's order granting Defendant

Wells Fargo Home Mortgage, Inc.'s ("Wells Fargo") motion for summary judgment.  For

the reasons that follow, we will vacate in part and affirm in part the District Court's judgment.

This action stems from a loan that Oppong obtained in 1996, which is now owned by the Federal Home Loan Mortgage Company. The loan was secured by his residence. Oppong appears to have been in default on the loan since 1997. In January 2000, First Union Mortgage Corporation ("First Union"), the company that serviced the loan, instituted a foreclosure action. Effective March 15, 2001, First Union assigned the servicing rights to Oppong's mortgage to Wells Fargo, and Wells Fargo was substituted as a party in the foreclosure action.

On August 2, 2001, Oppong filed a motion to dismiss the foreclosure action, claiming, inter alia, that Wells Fargo violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. (App. Ex. I). On January 28, 2002, after a bench trial, Judge Cohen of the Court of Common Pleas of Philadelphia County found in favor of Wells Fargo in the amount of $117,549.22. (App. Ex. J at Tr. 1/28/02 39:4-20.) Oppong filed a post-verdict motion reiterating his arguments, including his FDCPA claim. (App. Ex. K.) The post-verdict motion was denied on March 19, 2002 (App. Ex. M), and Oppong appealed.

During the pendency of his appeal, Oppong filed for bankruptcy. The Pennsylvania Superior Court dismissed his appeal without prejudice, to be reinstated after

2

the bankruptcy proceedings concluded.  (App. Ex. U.)  The bankruptcy case was closed in March 2003.  (App. Ex. T, Bankr. Docket.)

On April 16, 2002, Oppong filed this action in federal court against Wells Fargo, First Union, and Francis Hallinan, an attorney retained by Wells Fargo who had attempted to negotiate a settlement in the foreclosure action.  Oppong's complaint alleged that the Defendants violated the FDCPA by sending him misleading documents in violation of 15 U.S.C. § 1692j and failing to properly validate the debt as required by 15 U.S.C. § 1692g. Oppong also brought state claims.

The District Court granted summary judgment in favor of the defendants on all claims.  Oppong appealed, and we affirmed the grant of summary judgment in favor of First Union and Hallinan but remanded the FDCPA claims against Wells Fargo because there was an issue of material fact about whether Wells Fargo was a "debt collector" within the meaning of the FDCPA.  Oppong v. First Union Mortgage Co., No. 04-1252, slip op. at 9 (3d Cir. July 22, 2004) (nonprecedential opinion).  After further discovery, Wells Fargo renewed its motion for summary judgment, arguing that it was not a debt collector and that Oppong's claims were barred by res judicata.  The District Court found that Wells Fargo was a "debt collector," but granted the motion, holding that Oppong's FDCPA claims were precluded by res judicata.  Oppong appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over an order granting a motion for summary judgment.  See Kelly v. Drexel University,

3

94 F.3d 102, 104 (3d Cir. 1996). Summary judgment is appropriate when the record shows that there is no need for a trial because "there is no genuine issue of material fact and []the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Cattrett, 477 U.S. 317, 322 (1986).

I.

Under 28 U.S.C. § 1738, the rulings of state courts "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such state . . . from which they are taken." Thus, in determining the preclusive effect of a state court judgment, we apply the rendering state's law of res judicata. See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985).

Under Pennsylvania law, for the defense of res judicata to prevail, it is necessary that, between the previous action and the present action, there be an identity of issues decided, identity of the cause of action, identity of the persons and parties to the action, and identity of the quality or capacity of the parties suing or sued. E.g., Duquesne Slag Products Co. v. Lench, 415 A.2d 53, 55 (Pa. 1980). In order for there to be an identity of issues between the previous action and the current one, the previous action must have been decided by a judgment on the merits. See Gutman v. Giordano, 384 Pa. Super. 78, 81 (Pa. Super. 1989) ("It is apparent that a non pros for failure to answer a trial listing is not an adjudication on the merits and thus may not form the basis for application of res judicata.") Further, res judicata does not preclude a litigant from bringing in a second

4

action a claim that he could not have raised in the first action. See McCarter v. Mitcham, 883 F.2d 196, 199 (3d Cir.1989) (finding that Title VII action not barred by judgment on Pennsylvania civil rights suit because Title VII claims cannot be brought in state court).

Oppong's FDCPA claims are not precluded by res judicata because they were never decided on the merits in any of the prior litigation. Oppong first raised his FDCPA claims in his August 2, 2001, motion to dismiss the foreclosure action. (App. Ex. I.) The docket of the Court of Common Pleas indicates that Oppong's motion to dismiss was denied as moot because he had removed the case to federal court. (App. Ex. O at 10.)

When Judge Cohen found in favor of Wells Fargo in the foreclosure action, he did not rule on Oppong's FDCPA claims on the merits. The oral verdict is short, and does not refer to Oppong's FDCPA claim. The verdict, in its entirety says:

> The Court finds that the plaintiff has complied with the act 6 of the mortgage foreclosure law, and the Court is convinced that the assignment and proof of assignment has been filed of record. And notice was given to defendant in this matter incorporating the evidence presented in trial as well as the pretrial statements of both plaintiff and defendant. Court will make a finding in favor of plaintiff against the defendant in the complaint in mortgage foreclosure amount of $117,549.22 including interest, costs and attorneys fees.

(Id. at Tr. 1/28 39:5-19.) Contrary to Wells Fargo's argument, the "notice" that Judge Cohen found to have been given to Oppong does not seem to refer to the notice required by the FDCPA. See § 1692g. Judge Cohen does not mention the FDCPA, or terms such as "validation" that were integral to Oppong's argument. Rather, Cohen's "notice" refers to the notice of an intention to foreclose required by Act 6 of the mortgage foreclosure

5

law, 41 Pa. Conn. Stat. § 403. This notice was necessarily provided by First Union prior to its initiation of the foreclosure action (see App. Ex. F at 1), and says nothing about whether Wells Fargo complied with the FDCPA notice requirements or whether Wells Fargo engaged in other practices prohibited by §§ 1692j and 1692g as alleged in Oppong's complaint.

Judge Cohen's order denying Oppong's post-verdict motion also did not adjudicate the FDCPA claims on the merits. Rather, Judge Cohen expressly stated that, regarding the FDCPA claims, "[t]he Court will not address these issues."[1] (App. Ex. M at 2.) Accordingly, because none of these orders constituted a judgment of the FDCPA claims on the merits, Oppong's claims in the instant complaint are not barred by res judicata.[2]

Wells Fargo's argument that, because Oppong presented his FDCPA claims in the Court of Common Pleas and the court ruled against him in the foreclosure action, his claims were necessarily adjudicated on the merits, is unavailing. There is no evidence that Judge Cohen considered Oppong's FDCPA claims; he never mentioned the FDCPA

---

[1]Judge Cohen refers to unnamed rulings from the state and federal courts that had already disposed of those claims. However, none of these rulings adjudicated Oppong's FDCPA claims on the merits.

[2]Wells Fargo appears to argue that the FDCPA claims were previously adjudicated in Oppong's bankruptcy action as well as by the District Court when Oppong removed the foreclosure action to federal court. (See Appellee Br. at 21.) However both those orders dismissed Oppong's claims for lack of jurisdiction, (See App. Ex. Q and U.), and do not constitute judgments on the merits for the purposes of res judicata. See Fed. R. Civ. P. 41(b); Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 360 (3d Cir. 1983).

or used any terms such as "validation" in his opinions that would indicate that he was ruling on those issues. Further, Oppong's FDCPA claims against Wells Fargo were procedurally barred from being adjudicated in the foreclosure action. Because the FDCPA claims arose only after Oppong was in default, they were not proper counterclaims to bring in a mortgage foreclosure action. See Pa. R. Civ. P. 1148 ("A defendant may plead a counterclaim which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose."); Chrysler First Business Credit Corp. v. Gourniak, 411 Pa. Super. 259, 264 (Pa. Super. 1992) ("[Rule 1148] has been interpreted as permitting to be pled only those counterclaims that are part of or incident to the creation of the mortgage itself."). Further, the only remedy provided in the FDCPA for private litigants is damages, see Weiss v. Regal Collections, 385 F.3d 337, 342 (3d Cir. 2004), and thus, success on these claims would not necessarily have prevented the foreclosure. Accordingly, Oppong's FDCPA claims are not barred by res judicata because they were never adjudicated on the merits.

II.

Wells Fargo argues that the requirements of the FDCPA, such as § 1692g at issue here, do not apply because it is not a "debt collector" as defined in 15 U.S.C. § 1692a(6). Section 1692a(6) defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or

7

indirectly, debts owed or due or asserted to be owed or due another." Thus, a business may be a "debt collector" because its "principal purpose" is the collection of debts or because it "regularly" engages in the collection of debts. This definition of "debt collector" excludes creditors who attempt to collect their own debts, but does not exclude an entity in Wells Fargo's position who has acquired a debt that was already in default. See Pollice v. National Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir. 2000).

Wells Fargo is not an entity whose "principal purpose" is to collect others' debts. Rather, the declaration by Kristina Nagel submitted to the District Court along with the renewed summary judgment motion shows that, in a three-month period, only 89, out of 141,597, of the loans that Wells Fargo acquired were in default. (Ex. T. Tab A.) However, the District Court was correct to conclude that Wells Fargo is a debt collector under the FDCPA because it "regularly" collects debts owed to another.

Wells Fargo's primary argument appears to be that, because the proportion of its business that involves collecting others debts is so small in relation to its other business of originating mortgages, as a matter of law it does not "regularly" collecting debts. However, even though this issue is an open in this circuit, Wells Fargo provides no authority from any other circuit that supports their interpretation of the law.[3] The

---

[3]The District Court noted that Wells Fargo's position was supported by the Sixth Circuit Court of Appeals in Schroyer v. Frankel, 197 F.3d 1170, 1176 (6th Cir. 1999). However, Schroyer is inapposite to this case. Schroyer involved interpreting the effect of the 1986 repeal of the exemption of attorneys from the coverage of the FDCPA. The Sixth Circuit held that the House reports regarding the repeal revealed that Congress

8

authority from our sister circuits weighs heavily against Wells Fargo's position. The Fifth

Circuit, in Garrett v. Derbes, 110 F.3d 317, 318 (5th Cir. 1997), held that "if the volume

of a person's debt collection services is great enough, it is irrelevant that these services

only amount to a small fraction of his total business activity." The Ninth Circuit, without

inquiring into the proportion of its business consisted of debt collection activities, found

that Western Union "regularly" collected debts because it engaged in debt collection in

the usual course of its business. Romine v. Diversified Collection Services, Inc., 155

F.3d 1142, 1146 (9th Cir. 1998). And the Second Circuit recently overturned a district

court that had found in favor of Wells Fargo's position. In Goldstein v. Hutton, Ingram,

Yuzek, Gainen, Carroll & Bertollotti, 374 F.3d 56, 62-63 (2d Cir. 2004), the Second

Circuit held that a law firm was "regularly" engaged in debt collection by assessing "facts

closely relating to ordinary concepts of regularity" regardless of whether the entity

derives significant portion of its business from debt collection.

---

intended for the FDCPA to apply only to attorneys engaging in litigation who, in essence, play the role that non-attorney debt collectors played prior to the passage of the FDCPA in 1975. Because Wells Fargo is not an attorney or law firm, the debates surrounding the repeal of the attorney exemption are irrelevant to the issue of whether, under the 1977 Act, Wells Fargo "regularly" engages in debt collection. Further, the Sixth Circuit held that an attorney "regularly" collects debts when "the attorney or law firm collects debts as a matter of course for its clients *or* for some clients, *or* collects debts as a substantial, but not principal, part of his or its general law practice." Id. (emphasis added). Since Wells Fargo appears to engage in debt collection "as a matter of course," Schroyer would not support Wells Fargo's claim even if it were applicable.

9

Wells Fargo wishes us to disregard these analyses, as well as the common usage of the term "regularly" to find that even though it regularly "collects . . . debts owed to another," it should not be considered a debt collector under the FDCPA because it also engages in other activities. We decline that invitation. In Crossley v. Lieberman, 868 F.2d 566, 570 (3d Cir. 1989), we found that an attorney who had a long-term relationship with four creditor clients and filed 175 foreclosure or other collection suits in an eighteen-month period "regularly" collected debts owed to another. According to the certification of Kristina Nagel, Wells Fargo acquires approximately 89 home mortgages that are in default in a typical three-month period. (Ex. T.) Thus, in a typical eighteen-month period, it appears that Wells Fargo acquires 534 mortgages in default. Presumably Wells Fargo attempts to collect these debts, meaning that they attempt to collect three times the number of debts as the lawyer in Crossley, who we found to regularly collect debts. See 828 F.2d at 570. Because Wells Fargo, "the nation's leading originator of mortgages," (Appellee Br. at 30), is clearly a much larger operation than Lieberman's law firm, its debt collection activities represent a smaller proportion of its revenues. However, this disparity in size, by itself, is not dispositive of whether Wells Fargo "regularly" collects debts. See Goldstein, 374 F.3d at 63 ("[D]ebt collection constituting 1% of the overall work or revenues of a very large entity may, for instance, suggest regularity, whereas such work constituting 1% of an individual lawyer's practice might not.").

Wells Fargo's remaining argument, is that § 1692(a)(6) excludes "security enforcement activities" from the definition of debt collector. However, this argument is squarely foreclosed by our precedents. In <u>Piper v. Portnoff Law Assocs., Ltd.</u>, 396 F.3d 227, 234 (3d Cir. 2005), we found that attorneys who were enforcing a lien for unpaid water bills were collecting a debt such that the notice provisions of the FDCPA applied. In the process, we considered the same argument Wells Fargo raises here – that businesses enforcing security interests were excluded from the definition of "debt collector" under § 1692a(6) – and found that argument without merit. <u>Id.</u> at 236. Further, in <u>Crossley</u> we held that communication threatening foreclosure was covered by the FDCPA and looked at foreclosure filings to determine whether the defendant "regularly" engaged in debt collection activities. <u>See</u> 868 F.2d at 570. Accordingly we agree with the District Court that Wells Fargo is a "debt collector" under the FDCPA.

For the foregoing reasons, Wells Fargo was not entitled to judgment as a matter of law. Although we agree with the District Court that Wells Fargo is a debt collector, we disagree with the District Court's ruling as to the res judicata defense. Accordingly, the District Court's judgment will be affirmed in part and vacated in part. We will remand for further proceedings.

11